UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| R.R., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br><br> Defendant. | Case No. 24-cv-02736-VKD <br><br> **ORDER RE SOCIAL SECURITY APPEAL** <br><br> Re: Dkt. Nos. 9, 14, 15 |

Plaintiff R.R.[1] challenges a final decision of the Commissioner of Social Security ("Commissioner")[2] denying his application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, *et seq*. R.R. contends that the administrative law judge ("ALJ") erred in four respects. First, R.R. contends that the ALJ improperly rejected the medical opinion of consultative examining psychiatrist, Dr. Stephen Simonian. Second, R.R. contends that the ALJ erred in concluding that his mental impairments are not severe. Third, R.R. contends that the ALJ erred by failing to account for his mental impairments in determining his residual functional capacity ("RFC"). Fourth, R.R. contends that the ALJ failed to provide clear and convincing reasons for discounting R.R.'s allegations of physical limitations arising from his atrial fibrillation. The Commissioner maintains that the ALJ's decision is free of legal error and

---

[1] Because orders of the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by his initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] Frank Bisignano, the Commissioner of the Social Security Administration, is substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

1  supported by substantial evidence.

2  The parties have filed their respective briefs. Dkt. Nos. 9, 14, 15. The matter was
3  submitted without oral argument. Civil L.R. 16-5. Upon consideration of the moving and
4  responding papers and the relevant evidence of record, for the reasons set forth below, the Court
5  affirms the ALJ's decision.[3]

6  **I.   BACKGROUND**

7  R.R. was 59 years old on June 7, 2021, the date he filed his application for disability
8  insurance benefits. *See* AR[4] 59, 74. The record indicates that R.R. has at least a high school
9  education, and that he previously worked as a security guard from 2003 until April 2020. *See* AR
10 81, 242. R.R. stopped working on April 16, 2020, when his employer laid him off due to the
11 COVID-19 pandemic. AR 45, 252.

12 On June 7, 2021, R.R. applied for disability insurance benefits, alleging disability
13 beginning April 16, 2020 due to diabetes, high blood pressure, emphysema, post-traumatic stress
14 disorder ("PTSD"), depression, and high cholesterol. AR 60. His application was denied initially
15 and on reconsideration. AR 59-73, 75-93. An ALJ held a hearing on June 14, 2023, at which a
16 vocational expert testified. AR 34, 53-56.

17 On July 6, 2023, the ALJ issued an unfavorable decision. AR 17-28. She found that R.R.
18 met the Act's insured status requirements through December 31, 2025, his date last insured, and
19 that he has not engaged in substantial gainful activity since the alleged onset date of April 16,
20 2020. AR 17, 19.

21 The ALJ found that R.R. has the following severe impairments: chronic obstructive
22 pulmonary disease, diabetes mellitus, hypertension, osteoarthritis of the right knee, atrial
23 fibrillation, obstructive sleep apnea, and obesity. *Id.* However, she concluded that R.R. does not
24 have an impairment or combination of impairments that meets or medically equals the severity of

---

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 5, 12.

[4] "AR" refers to the certified administrative record filed with the Court. Dkt. No. 8.

1   one of the impairments listed in the Commissioner's regulations. AR 21. Additionally, the ALJ
2   found that R.R. also has medically determinable mental impairments of depressive disorder,
3   PTSD, adjustment disorder, and cannabis use disorder, but she concluded that these impairments
4   do not cause more than minimal limitation in R.R.'s ability to perform basic mental work activities
5   and are therefore not severe. AR 20.

6       The ALJ determined that R.R. has the RFC to perform light work as defined in 20 CFR
7   § 404.1567(b), except that he has additional limitations and can "stand and/or walk a combined
8   total of six hours per workday; frequently balance, stoop, kneel, crouch, crawl and climb ramps
9   and/or stairs; occasionally climb ladders, ropes or scaffolds; and have occasional exposure to
10  fumes, odors, dust, gases, poor ventilation and hazards." AR 22. Applying this RFC, the ALJ
11  found that R.R. is capable of performing his past relevant work as a Security Guard and Guard,
12  Sergeant. AR 27. Accordingly, the ALJ concluded that R.R. has not been disabled, within the
13  meaning of the Act, from the alleged onset date of April 16, 2020 through the July 6, 2023 date of
14  the ALJ's decision. *Id.*

15      The Appeals Council denied R.R.'s request for review of the ALJ's decision. AR 1-3.
16  R.R. then filed the present action seeking judicial review of the decision denying his application
17  for benefits.

18  **II.   LEGAL STANDARD**

19      Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's
20  decision to deny benefits. The Commissioner's decision will be disturbed only if it is not
21  supported by substantial evidence or if it is based upon the application of improper legal
22  standards. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v.
23  Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted). In this context,
24  the term "substantial evidence" means "more than a mere scintilla" but "less than a
25  preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to
26  support a conclusion." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103
27  (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on
28  other grounds*); *see also Morgan*, 169 F.3d at 599 (citation omitted). When determining whether

1 substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Ahearn*, 988 F.3d at 1115 (citation omitted); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Ahearn*, 988 F.3d at 1115-16 (citation omitted); *Morgan*, 169 F.3d at 599 (citation omitted).

## III.   DISCUSSION

R.R. raises four challenges to the ALJ's decision. The Court first considers R.R.'s challenges to the ALJ's evaluation of evidence concerning R.R.'s mental impairments and consideration of those impairments with respect to the RFC determination. Then, the Court considers R.R.'s challenge to the ALJ's assessment of R.R.'s allegations and subjective testimony about limitations arising from his atrial fibrillation.

### A.   Dr. Simonian's Medical Opinion

R.R. contends that the ALJ improperly rejected consultative examiner Dr. Simonian's medical opinion. Dkt. No. 9 at 5-9. Specifically, R.R. argues that the ALJ did not give well-supported reasons for discrediting Dr. Simonian's opinion. *Id.* at 9. The Court disagrees.

Under the regulations that apply to R.R.'s application,[5] the Commissioner does not give specific evidentiary weight to medical opinions. Instead, the Commissioner evaluates the "persuasiveness" of all medical opinions in the record based on: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c; *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies.").

---

[5] The Commissioner's rules and regulations regarding the evaluation of medical evidence were revised in March 2017 and apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because R.R.'s application was filed after March 27, 2017, these revised regulations apply to his case.

4

An ALJ's decision, "including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

Supportability and consistency are considered the most important factors, and the ALJ is required to explicitly address them in his or her decision. 20 C.F.R. § 404.1520c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). The ALJ "may, but [is] not required to," explain how he or she considered the remaining three factors listed in the regulations. 20 C.F.R. § 404.1520c(b)(2).

Dr. Simonian conducted a psychiatric evaluation of R.R. by video in November 2021. AR 25, 449. He noted that R.R. "presented in a friendly manner" and "interacted appropriately with the examiner throughout the evaluation. No bizarre behavior was observed." AR 449-450. Dr. Simonian observed that during the examination, R.R. was alert and oriented, his affect was "rather constricted," and "mood [was] sad." AR 451-452. R.R. denied any delusions, hallucinations, or suicidal or homicidal ideations. AR 452. Dr. Simonian noted R.R.'s statements about his mental health impairments and treatments. AR 450. R.R. reported that he has PTSD and a bipolar disorder because of military service. *Id*. R.R. saw a psychiatrist in 1989 for PTSD and "had a few suicide attempts and was 5150." *Id.* R.R. reported he had not seen a psychiatrist or therapist for about a year, and he had previously been going to a Veterans Affairs clinic and was on Prozac. *Id.* R.R. said he had been hospitalized for psychiatric issues four or five times, with the last time being in 1998. *Id.* Dr. Simonian did not review R.R.'s medical records; rather, in addition to his examination of R.R., Dr. Simonian considered "the claimant's response to [a] questionnaire." AR 449.

Dr. Simonian opined that R.R. is able to follow simple oral and written one or two steps instructions without limitation, but his ability to follow detailed and complex instructions is moderately limited. AR 453. He further found that R.R.'s abilities to interact with the public,

1    coworkers, and supervisors; maintain concentration and adaptation for a period of time; react to
2    stressors common in a workplace environment; and maintain regular attendance in the workplace
3    and perform work activities on a consistent basis are moderately limited.  *Id.*  He further opined
4    that R.R.'s ability to perform work activities without special additional supervision is mildly
5    limited.  *Id.*

6    The ALJ found Dr. Simonian's opinion unpersuasive.  AR 25.  She found that the opinion
7    was not supported by Dr. Simonian's own examination findings, "which were largely
8    unremarkable."  *Id.*  The ALJ also found that Dr. Simonian's opinion that R.R. suffered from
9    moderate limitations in mental functioning is "not supported by any other medical records for a
10   twelve month period."  *Id.*  The ALJ noted that Dr. Simonian's conclusions are not consistent with
11   R.R.'s treatment records, which Dr. Simonian did not review.  *Id.*  In particular, she observed that
12   R.R.'s mental health treatment has been extremely limited during the claim period and that R.R.
13   has rarely complained of symptoms.  *Id.*

14   R.R. acknowledges that the ALJ considered both supportability and consistency in
15   evaluating Dr. Simonian's opinion.  *See* Dkt. No. 9 at 7.  However, R.R. argues that the ALJ's
16   assessment of supportability was based on an erroneous characterization of Dr. Simonian's
17   examination findings as "largely unremarkable."  *Id.*  According to R.R., Dr. Simonian's
18   examination showed "abnormal results," including Dr. Simonian's observation that R.R. had a
19   "sad mood and constricted affect" and a "history of psychiatric holds and past psychiatric
20   treatment."  *Id.*  In addition, R.R. argues that the ALJ failed to explain why she found Dr.
21   Simonian's opinion inconsistent with R.R.'s treatment records, observing that "it is well-
22   established that people with mental impairments often exercise poor judgment in seeking out
23   care."  *Id.* at 8-9.  Finally, R.R. challenges the ALJ's observation that Dr. Simonian's opinion was
24   based on one-time examination of R.R. without the benefit of treatment records, arguing that Dr.
25   Simonian's opinion should not be discredited on this ground.  *Id.* at 8.

26   The ALJ applied the correct legal standard in evaluating Dr. Simonian's opinion, and her
27   findings are supported by substantial evidence.  First, the ALJ did not mischaracterize Dr.
28   Simonian's own examination findings in assessing the supportability of his opinion.  While Dr.

Simonian did state that R.R. had a sad mood and constricted affect, he also observed that R.R. presented in a friendly manner; showed good eye contact; had a normal facial expression; was alert and oriented; interacted appropriately with the examiner throughout the examination; and exhibited no bizarre behavior—in other words, Dr. Simonian's findings could reasonably be described as "largely unremarkable." AR 449-450, 452. This characterization extends to Dr. Simonian's observations about R.R.'s psychiatric treatment and history. While R.R. had been hospitalized previously for psychiatric conditions, Dr. Simonian noted that his last such hospitalization occurred in 1998, more than twenty years before the November 2021 evaluation. AR 450. Moreover, R.R. reported not having seen a psychiatrist or therapist for about a year. *Id.* Thus, substantial evidence supports the ALJ's determination that Dr. Simonian's opinion is not supported by his own examination findings.

Second, the ALJ adequately explained why she found Dr. Simonian's opinion inconsistent with R.R.'s treatment records. While R.R. argues that some treatment records show he previously reported symptoms of irritability and depression, the ALJ correctly observed that R.R.'s complaints of such symptoms and other symptoms of depression and PTSD were infrequent. AR 25-26; *see* Dkt. No. 9 at 9. In addition, in discussing the four broad functional areas known as the "paragraph B" criteria, the ALJ specifically addressed other evidence in the record showing that R.R. has only mild limitations in these areas.[6] *See* AR 20-21. R.R. does not challenge the ALJ's characterization of that evidence. Thus, substantial evidence supports the ALJ's determination that Dr. Simonian's opinion is inconsistent with R.R.'s treatment records and other evidence in the record.

Finally, to the extent R.R. argues that the ALJ discredited Dr. Simonian's opinion because it was based on a one-time examination of R.R., the Court is not persuaded that the ALJ committed such an error. In addition to supportability and consistency, the ALJ is permitted to

---

[6] *See Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (in assessing whether ALJ's decision is supported by substantial evidence, courts "look[] to all the pages of the ALJ's decision"); *see also Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (law requires ALJ "to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings'") (quotations and citation omitted).

1    consider other factors in evaluating the persuasiveness of a medical opinion, including the medical
2    source's "relationship with the claimant" and "evidence showing a medical source has familiarity
3    with the other evidence in the claim." 20 C.F.R. § 404.1520c.  The ALJ cannot be faulted for
4    noting that Dr. Simonian examined R.R. on only one occasion and was unfamiliar with R.R.'s
5    treatment records, particularly because this was not the ALJ's sole or principal basis for
6    discrediting Dr. Simonian's opinion.
7    Accordingly, the Court finds no error in the ALJ's evaluation of Dr. Simonian's opinion.

**B.    Severity of R.R.'s Mental Impairments**

Relying principally on his critique of the ALJ's evaluation of Dr. Simonian's opinion, R.R. argues that the ALJ erred in finding his mental impairments not severe.  Dkt. No. 9 at 3.  The Commissioner responds that the ALJ's determination is supported by substantial evidence.  Dkt. No. 14 at 1.  The Court finds no error here.

At step two of the five-step sequential analysis, the ALJ must assess the medical severity of a claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  A severe impairment "must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. § 404.1521.  The claimant bears the burden of showing that he has a medically severe impairment or combination of impairments.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (stating that "[t]he burden of proof is on the claimant as to steps one to four" of the sequential analysis).

An impairment or combination of impairments is considered "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  "Basic work activities are abilities and aptitudes necessary to do most jobs," *Smolen*, 80 F.3d at 1290 (citation modified), including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting," Social

Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3. "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290 (citing SSR 85-28) (citation modified); *see also Webb*, 433 F.3d at 686 (same).

The ALJ found that R.R. has non-severe mental impairments of depressive disorder, PTSD, adjustment disorder, and cannabis use disorder, with no more than mild limitations in the four broad areas of mental functioning known as the "paragraph B" criteria: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. AR 20-21; *see also* 20 C.F.R. § 404.1520a (describing process for evaluating mental impairments). She concluded that these impairments, considered singly and in combination, do not cause more than minimal limitation in R.R.'s ability to perform basic mental work activities. AR 20.

R.R. contends that his mental impairments more than minimally affected his ability to work. Dkt. No. 9 at 3. R.R. principally relies on Dr. Simonian's opinion that he has moderate limitations in mental functioning. *Id.* For the reasons explained above, the ALJ did not err in discrediting Dr. Simonian's opinion. In addition, R.R. argues that the ALJ overlooked or minimized evidence showing that when R.R. sought mental health treatment, he had an irritable or anxious mood during examination. *Id.* (citing AR 640, 643). R.R. also argues that the ALJ overlooked his history of psychiatric treatment and hospitalization. *Id.* (citing AR 450, 642).

R.R.'s arguments are not persuasive. While his treatment records do reflect occasions on which he reported feeling irritable or anxious, the ALJ did not overlook these records, but considered this evidence together with other records reflecting no such complaints and normal or mild limitations in mental functioning. *See, e.g.*, AR 20 (citing AR 457) (noting examiner described R.R. as "calm, cooperative and verbally responsive"); AR 21 (citing AR 452) (stating R.R. did not exhibit any delusional thinking, hallucinations, or suicidal or homicidal ideation); AR 24 (citing AR 574-575) (noting progress notes stating R.R.'s mood was "okay" and R.R. had no cognitive or memory deficits). In addition, the ALJ did consider R.R.'s psychiatric history, including his hospitalizations, correctly noting that the last such hospitalization occurred in 1998.

9

AR 20, 23 (citing AR 449-454).  To the extent R.R. suggests that the ALJ "cherry picked" evidence supporting her conclusion, that suggestion is not persuasive.  Rather, the ALJ's decision reflects that she fairly considered the record as a whole in assessing the severity of R.R.'s mental impairments.

Accordingly, the Court concludes that substantial evidence supports the ALJ's finding at step two that R.R.'s mental impairments are not severe.

**C.     RFC Determination**

R.R. contends that the ALJ erred by not including any restrictions based on mental impairments in her determination of his RFC.  Dkt. No. 9 at 2-5.  The Commissioner argues that the ALJ properly considered R.R.'s mild limitations in determining his RFC and correctly concluded that no non-exertional limitations should be incorporated.  Dkt. No. 14 at 2-3.  The Court finds no error in the ALJ's RFC determination.

In assessing a claimant's RFC, an ALJ must consider all of the claimant's limitations, including those that are not severe.  *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."); *id*. § 404.1545(e) ("When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of this subpart, we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."); *see also* SSR 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

As the ALJ noted, *see* AR 21, the limitations identified in the paragraph B criteria "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  SSR 96-8p, 1996 WL 374184, at *4.  "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph[] B . . . of the adult mental disorders listings in 12.00 of the Listing of Impairments . . . ."  *Id*.; *see*

*also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E (providing examples illustrating the nature of each of the four broad function categories).

While the regulations require the ALJ to *consider* the effect of all of a claimant's impairments in formulating the RFC, they do not require her to translate every non-severe impairment into a functional limitation in the RFC. *D.L.P. v. Kijakazi*, No. 21-cv-00792-VKD, 2022 WL 4472064, at *3 (N.D. Cal. Sept. 26, 2022); *see also Medlock v. Colvin*, No. 15-cv-9609-KK, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016) ("*Consideration* of 'the limiting effects of all impairments' does not necessarily require the *inclusion* of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work."). "Provided the ALJ does not rely on boilerplate language, but actually reviews the record and specifies reasons supported by substantial evidence for not including the non-severe impairment, the ALJ has not committed legal error." *Medlock*, 2016 WL 6137399, at *5.

Mainly relying on *Hutton v. Astrue*, 491 F. App'x 850 (9th Cir. 2012) (unpublished), R.R. argues that the ALJ should have included "mental work restrictions" in R.R.'s RFC. *See* Dkt. No. 9 at 4-5. R.R. argues that the omission of such restrictions "was particularly problematic in this case given that the ALJ found that [R.R.] could perform skilled and semi-skilled past work as a security guard and security guard supervisor." *Id.* at 5. R.R. claims, without citation to any authority, that "[s]uch work involved detailed reasoning, frequent interaction with others, and high stress situations," as well as "restraining patients," "writing reports," and "supervising other employees." *Id.* R.R. contends that "even mild limitations would impact [his] ability to return to such work." *Id.* In response, the Commissioner observes that R.R. does not identify any non-exertional or "mental work restrictions" that he believes the ALJ should have incorporated in the RFC. Dkt. No. 14 at 2. The Commissioner further argues that *Hutton* does not apply here, but rather that the more recent, precedential *Woods* decision "directly negate[s]" R.R.'s argument. *Id.*

In *Hutton*, the ALJ determined at step two that the claimant's PTSD caused mild limitations in one of the four broad paragraph B functional areas and was not severe. *Hutton*, 491 F. App'x at 850. In determining the claimant's RFC, however, the ALJ excluded the claimant's

11

PTSD from consideration altogether, finding that the claimant lacked credibility and that "his PTSD claims were in 'great doubt.'" *Id*. The Ninth Circuit held that this constituted reversible error because, while the ALJ was free to discount the claimant's testimony, the ALJ could not ignore his own finding that the claimant's non-severe PTSD caused mild limitations in the areas of concentration, persistence, or pace. *Id.* at 850-51. In *Woods,* the ALJ determined at step two that the claimant had mild limitations in two of the four areas of mental functioning comprising the paragraph B criteria and no limitations in the remaining two areas. *Woods*, 32 F.4th at 794. In determining the claimant's RFC, the ALJ found that the claimant could perform light work, with additional physical limitations, but included no mental limitations. *Id.* at 793-94. The Ninth Circuit affirmed the RFC determination, observing that the ALJ had considered the claimant's mental functioning and determined that it did not reflect any significant complaints of mental health symptoms. *Id.* at 794. The Ninth Circuit concluded that the ALJ did not err in failing to include mental limitations in the RFC. *Id.* As another court in this Circuit has observed, "*Woods* does not hold that an RFC for light work will always be adequate to address mild limitations found at step two, but instead reaffirms the principles described here—that the ALJs should be affirmed where they show their work, and their reasons are supported by substantial evidence." *Diane v. Kijakazi*, No. 22-cv-02101-BFM, 2023 WL 7301969, at *5 (C.D. Cal. Nov. 6, 2023).

Here, the ALJ considered the evidence of R.R.'s mental impairments in the record, including treatment records, medical opinions, statements, and testimony, and explained her findings regarding the several functions within each of the four broad paragraph B criteria. The ALJ referred back to both the objective medical evidence and her paragraph B findings in determining R.R.'s RFC. *See* AR 20-21, 22, 23, 24-25. For example, in finding that R.R. has mild limitations in understanding, remembering, or applying information,[7] the ALJ observed that

---

[7] "This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.1.

R.R. "was able to follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, and respond to questions from medical providers" and that the record demonstrated R.R. has "average intellectual functioning with the ability to perform serial 7s and interpret proverbs." AR 20 (citing AR 451-452, 575, 640, 643). In discussing R.R.'s mild limitations in interacting with others,[8] the ALJ noted that R.R. "had a good rapport with providers, was described as pleasant and cooperative, and had good interactions with non-medical staff." *Id.* (citing AR 449-450, 457, 575, 640, 643). Additionally, the ALJ noted that the consultative examining psychiatrist observed that R.R. "presented in a friendly manner and interacted appropriately with the examiner throughout the evaluation with no unusual behavior observed." *Id.* (citing AR 449-450). The ALJ also noted that a speech examination of R.R. was unremarkable. *Id.* (citing AR 457). With respect to the functional ability to concentrate, persist, or maintain pace,[9] the ALJ noted that mental status examinations generally found that R.R.'s attention and concentration were within normal limits. AR 20-21 (citing AR 575, 640, 643). As for the ability to adapt or manage oneself,[10] the ALJ correctly observed that objective evidence showed that R.R. has "appropriate grooming and hygiene, no problem getting along well with

---

[8] "This area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public. Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.2.

[9] "This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.3.

[10] This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.4.

13

providers and staff, and generally exhibited a normal mood and affect," he "did not exhibit any delusional thinking, hallucinations or suicidal or homicidal ideation," and R.R. was "oriented in all spheres." AR 21 (citing AR 452, 457, 575, 640). These assessments are supported by substantial evidence.

The ALJ also considered and discussed the medical evidence and opinions relating to R.R.'s mental impairments. *See* 20 C.F.R. § 404.1545(a)(3) (stating that RFC is assessed "based on all of the relevant medical and other evidence."). She found that R.R.'s mental health treatment was infrequent and conservative, with monitoring and a few medication adjustments. AR 26. With respect to the opinion evidence relating to R.R.'s mental impairments, the ALJ found persuasive the December 7, 2021 and March 21, 2022 opinions of state agency consultants Dr. Stacy Koutrakos, Psy.D. and Dr. Ellen Rozenfeld, Psy.D. *Id.* Drs. Koutrakos and Rozenfeld found that R.R.'s depression and history of PTSD were not severe, as he had only mild impairments in functioning. *Id.* (citing AR 59-73, 75-93). The ALJ found Drs. Koutrakos and Rozenfeld's opinions persuasive because they were supported by their review of much of the medical evidence, a reasonable explanation, and their disability program knowledge. *Id.* The ALJ explained that these opinions were "consistent with the record as a whole, which shows infrequent complaints of symptoms, no mention of related functional difficulty, conservative treatment, mostly normal mental status exam findings." *Id*. R.R. does not challenge the ALJ's evaluation of these medical opinions, and that evaluation is supported by substantial evidence. As noted above, substantial evidence also supports the ALJ's rejection of Dr. Simonian's opinion that R.R. has more severe mental limitations.

The record reflects that the ALJ considered and discussed R.R.'s mental impairments in determining his RFC. As in *Woods*, R.R. identifies no particular evidence that the ALJ failed to consider. R.R. also does not explain what limitations he believes ought to have been included in the RFC to capture the mild limitations the ALJ found he had and that are not otherwise reflected in the RFC for light work. *See, e.g.*, *Rania v. Kijakazi*, No. 2:20-cv-01541 MCE CKD (SS), 2021 WL 5771663, at *3 (E.D. Cal. Dec. 6, 2021), *report and recommendation approved*, 2022 WL 95228 (E.D. Cal. Jan. 7, 2022) (rejecting plaintiff's argument that the ALJ was required to

translate his findings of non-severe mental limitations into "concrete limitations" in the RFC because the ALJ properly considered all of plaintiff's impairments); *see also Jones v. Berryhill*, No. EDCV 17-1138-AS, 2018 WL 3956479, at *3 (C.D. Cal. Aug. 15, 2018) ("Because the ALJ found that Plaintiff's mental impairments were non-severe and did not cause any significant impairments, the ALJ was not required to include them in Plaintiff's RFC."); *Ball v. Colvin*, No. CV 14-2110-DFM, 2015 WL 2345652, at *3 (C.D. Cal. May 15, 2015) ("As the ALJ found that Plaintiff's mental impairments were minimal, the ALJ was not required to include them in Plaintiff's RFC.").

To the extent R.R. contends that the ALJ erred in concluding that he could perform his past relevant work as security guard and security guard supervisor, this argument is not well-developed or supported. However, the Court notes that the ALJ did not find that R.R. could perform these jobs as "actually performed," but only as "generally performed." AR 27. R.R.'s arguments appear to focus solely on whether he could perform his prior jobs as he actually performed them. R.R. does not identify any mental limitations found by the ALJ that impact his ability to perform his past relevant work as a security guard and security guard supervisor ("guard, sergeant") as generally performed.

Accordingly, the Court concludes that substantial evidence supports the ALJ's determination that R.R.'s mental impairments do not cause more than minimal limitations in his ability to perform basic work activities and that no additional restrictions must be included in the RFC to account for these minimal limitations.

### D. R.R.'s Allegations and Subjective Testimony

R.R. argues that the ALJ failed to provide clear and convincing reasons for discounting his allegations of physical dysfunction arising from his atrial fibrillation. Dkt. No. 9 at 9. The Commissioner argues that substantial evidence supports the ALJ's evaluation of R.R.'s statements about his atrial fibrillation symptoms. Dkt. No. 14 at 5-8.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014) (citation modified). In assessing a claimant's subjective testimony, an ALJ conducts a two-

15

step analysis. First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996)). If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Smolen*, 80 F.3d at 1281); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("We therefore review the ALJ's discrediting of Claimant's testimony for specific, clear, and convincing reasons."). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (citation modified). Although lack of medical evidence cannot form the sole basis for discounting a claimant's subjective testimony, it is a factor that the ALJ can consider in his credibility analysis. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, R.R. testified that he experiences chest pain related to atrial fibrillation every day and it is his most bothersome symptom. AR 45-46. He further testified that he experiences atrial fibrillation symptoms with physical exertion. AR 46.

The ALJ found that R.R.'s medically determinable impairments could reasonably be expected to cause his alleged symptoms, however, she also found that R.R.'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. AR 23. As the ALJ did not identify any affirmative evidence of malingering, she was required to provide specific, clear, and convincing reasons for this determination. The ALJ's decision meets this standard.

In discounting R.R.'s testimony, the ALJ noted that R.R. was first diagnosed with atrial fibrillation in May 2022 when he visited the emergency room after experiencing chest pain. AR 23 (citing AR 477-483, 515-677). The ALJ noted that a subsequent study performed in July 2022 revealed that R.R.'s predominant rhythm was atrial fibrillation with an average of 76 beats per

16

1   minute and a range of 36 to 190 beats per minute and two tachycardia runs occurred. AR 24

2   (citing AR 479, 502-504, 594-595). However, the ALJ noted that as of December 2022, R.R.'s

3   atrial fibrillation condition was stable. *Id.* (citing AR 594-595). Thereafter, the ALJ noted that

4   R.R.'s treatment records reflect that in July 2022, he reported feeling "alright" and denied any

5   atrial fibrillation symptoms. *Id.* (citing AR 615-621). At this visit, R.R. stated that his last

6   episode of atrial fibrillation symptoms occurred in June 2022. AR 617; *see also* AR 26 (citing AR

7   561-570). The ALJ noted that while an April 10, 2023 progress note reflects that R.R. reported

8   shortness of breath and chest pain after walking, the same note states that R.R. was not in acute

9   distress and spoke in full sentences without increased work of breathing or audible wheezing. AR

10  24 (citing AR 579-581). Regarding R.R.'s reports of shortness of breath, the ALJ observed that at

11  least one treatment record indicates that this symptom may be attributed to R.R.'s sleep apnea, not

12  his atrial fibrillation condition. AR 25 (citing AR 543-549).

13        In addition, the ALJ observed that R.R.'s "treatment is somewhat infrequent with regard to

14  both his physical and mental health, and the treatment he did receive was generally conservative

15  with routin[e] monitoring . . . and a few medication adjustments." AR 26. R.R. contends that the

16  ALJ erroneously found that treatment was conservative because neither the treatment records nor

17  the ALJ indicated there was a more aggressive way to treat R.R.'s atrial fibrillation. Dkt. No. 9 at

18  11. However, the ALJ explained that she discounted R.R.'s allegations about his atrial fibrillation

19  symptoms because R.R. infrequently sought treatment and when he did seek care, the treatment

20  was relatively minor, consisting of routine monitoring and a few medication adjustments. *See*

21  *Burch*, 400 F.3d at 681 ("The ALJ is permitted to consider lack of treatment in his credibility

22  determination.").

23        Apart from the objective medical evidence, the ALJ also noted that R.R.'s work as a

24  security guard ended due to the COVID-19 pandemic rather than R.R.'s inability to perform the

25  work. AR 26. R.R. argues that this has no bearing on evaluating whether his cardiac impairments

26  prevented him from working beginning in 2022. Dkt. No. 9 at 11. However, R.R. alleges a

27  disability onset date of April 16, 2020. AR 17. In weighing a claimant's credibility, an ALJ may

28  consider inconsistencies in his allegations and testimony. *See Orn*, 495 F.3d at 636. The ALJ

properly considered the fact that R.R. stopped working because he was laid off during the pandemic because it is inconsistent with R.R.'s assertion that he became unable to work on April 16, 2020 due to his impairments. *See* AR 215; *see also Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), *as amended* (Nov. 9, 2001) (holding that the fact that the claimant stopped working because he was laid off, rather than because he was injured, is a "sufficient reason[] for disregarding pain testimony").

Viewing the record as a whole, the Court finds that the ALJ provided sufficient specific, clear, and convincing reasons for discounting R.R.'s subjective testimony regarding the intensity, persistence and limiting effects of his atrial fibrillation.

## IV.  CONCLUSION

Based on the foregoing, the Court affirms the ALJ's decision. The Clerk of Court shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: September 30, 2025

Virginia K. DeMarchi
United States Magistrate Judge